Our final case this morning is Smith v. Cheyenne Retirement Investors 17-8055. Counsel, you may proceed as ready. May it please the court and counsel, my name is Bernard Phelan. I'm pleased to represent Diane Smith in this Title VII Civil Rights Retaliation case. When Diane Smith submitted her charge of discrimination to the EEOC in May of 2014, she did not know why she had been subjected to adverse employment actions against her, including intense scrutiny, disagreeable conversations with her manager, being terminated for false and unreliable reasons. She filed her charge of discrimination, was very detailed in describing what had happened to her. She mentioned and she said, I have had previous experience of having filed charges of discrimination in 2012, and this is what has happened to me in the last few months. That charge of discrimination was then sent to the employer, and the employer in its response said, there's nothing to this charge of discrimination, and this is the second charge of discrimination that has been filed by this employee. It was appealed, and there was a finding that we were not responsible. It cost us a lot of money and time, and we yet continued to employ her. Counsel, where in the 2014 complaint was there reference to the 2012 complaint? That is in Exhibit M in the appendix, and it starts on page 129 of the appendix, and it says, Previous examples of disparate discriminatory treatment occurred in September 2012 when demoted from being a shift leader. I don't see any reference to a previous complaint having been filed. That's what you said in your opening statement. Well, it was a previous example in her 2014 charge of discrimination that she had filed. She had experienced discrimination in 2012. But isn't a retaliation claim, doesn't a retaliation claim need to be based on, quote-unquote, protected activity, and that protected activity is having made a complaint about discrimination? And I don't see anything in the document you're talking about about a previous complaint. All right. In this process of EEOC charge of discrimination, it's a laitonized process. Laid people are allowed to follow. Counsel, I think I know where you're going, and you can continue on that course, but I just want to pin down whether you're making any claim that this document references a previous complaint. Well, it doesn't reference a previous complaint. It does reference previous evidence. No. Does it reference a previous complaint? It does not. All right. So if you want to explain that, that's fine, but let's make sure we're describing this accurately. Yes. It's a previous, the exact words are previous examples of disparate discriminatory treatment occurred September 2012. Now, as a result of filing that charge of discrimination, the employer responded by saying there was a previous complaint. Now, that's part of the investigation, the scope of investigation that an EEOC is supposed to conduct, and that is an investigation consists of asking the other party for their side of the story. When the other party presented its side of the story, the issue of that previous complaint was very obviously and straightforwardly set forth. That gave the complainant information as to why she was being treated the way she was in 2014. And if you just count back the days from the time that the harassment started in February and March of 2014 to the time when the right to sue letter was issued, it's 90 days or thereabouts. And after that, Ms. Smith started to be intensely scrutinized about how she set up her dining room, what she was doing with the refrigerator. She made a complaint about this, and that was given short shrift. She called the hotline that was provided to employees, and that didn't result in anything. And then finally, on the day of her termination, she's criticized by her supervisor for coming in the wrong door, from parking in the wrong parking place, and then ultimately terminated in the afternoon after she had completed her duties for the day for not being in the proper dining room. And that really comes down to a matter of credibility as to the cause for termination. The employer says, I told, or we told her to be in the upstairs dining room. She says, they never told me to be in the upstairs dining room. There was no meeting between myself and the manager to be in the upstairs dining room, and this is the reason I'm terminated. She filed her charge of discrimination, and the scope of the investigation included these prior complaints, and the employer made clear what was in its mind when Ms. Smith was terminated, and that was those previous charges of discrimination. And so it's clear that when this case was filed, she had, Ms. Smith had exhausted her administrative remedies by filing her charge of discrimination, letting the EEOC investigation proceed, the right to sue letter was issued, and then when her rights were cut off for that 2012 complaint, then she started to see retaliation, adverse employment actions taken against her. She didn't know why until the employer said why, and that was the previous complaints. Then if we concede, if it's conceded that there was jurisdiction, the complaint was also dismissed on summary judgment, based upon an evaluation of the evidence by the court, which did not give to the non-movement the benefits of all reasonable inferences that could be attributed to the evidence in her behalf. First, proximity in time. Now, in trying these retaliation cases, there's two kinds of evidence, direct evidence and circumstantial. Generally, in retaliation cases, you have to rely on circumstantial evidence, and in many, many cases they say proximity in time is something that should be considered. There are opinions which render certain periods of time as being not close enough to cause an inference of retaliation alone, but they say you need to have additional facts in terms of whether or not this proximity in time circumstance is relevant. And here we have additional facts. First of all, the statement by the employer during the investigation that this person has previously filed, we had to appeal, or there was an appeal, we had to spend thousands of dollars, we had to hire an attorney. It's just really a problem for us. And the fact that the termination from the viewpoint of the employee was pretextual in and of itself. There was no direct order from anybody, according to her, to go to a different dining room. She performed her duties that day as she did on most days. The testimony of the manager of the defendants that he had met with her that morning and had told her that she needed to be upstairs and she, quote, had no verbal answer, did not occur according to her. So there's a clear dispute of a material fact with regard to the alleged insubordination by Ms. Smith. Nevertheless, the court granted summary judgment despite those clear disputes of material fact on the basis that there was no showing that the manager actually believed that there was insubordination. That claim is to test whether the person that fired her was Mr. Oliver, right? The person who fired Ms. Smith was Mr. Oliver. Yes. And so when you when you're saying that somebody had no proof of insubordination, Mr. Oliver was told there was insubordination by Mr. Hepburn. Right. So he had evidence to believe Mr. Hepburn. So he had evidence of insubordination. Now, you may say that Mr. Hepburn didn't, but he wasn't the operative person that fired her. Right. Mr. Oliver, in the meeting in the afternoon, asked Mr. Hepburn, did you tell Ms. Smith to come upstairs? And after equivocating, he said yes. Then Mr. Oliver said, I therefore fire you because I believe Mr. Hepburn and not you. In his deposition testimony, Mr. Oliver said, I met with Diane Smith that morning with Mr. Hepburn and I told her I asked her why she didn't go upstairs and she had no verbal response. Ms. Smith says that meeting did not take place. There is a direct conflict of material fact, dispute of material fact as to whether or not she was given an order that she failed to follow. This is the this is the meat of a jury trial. Who is more credible? Who is the jury to believe Mr. Oliver or Ms. Smith? Mr. Hepburn did sign fill out a statement as to what occurred and he doesn't state anything about this early morning meeting. Mr. Oliver says that there was no verbal response. Perhaps there was no verbal response because there was no such meeting. And Ms. Smith contends that this was a setup, that after the 90 day period of time expired, then she was put on strict scrutiny. She was given short shrift by the manager. She called the hotline to complain, got no response and then was terminated without cause. Being terminated without cause from the perspective of the employee is evidence of causal connection. And that's set forth. That's clearly the law under the Reeves case. Reeves versus the plumbing company. These pretextual reasons for termination are is or evidence of causal connection. So we request that the lower court be reversed and that the matter be set for trial. Thank you. Thank you, counsel. May it please the court. My name is Cale Lenhart. I appear on behalf of Cheyenne Retirement Investors, otherwise known as Point Frontier, which is a retirement community up in Cheyenne, Wyoming. As you are no doubt aware, this is a case involving alleged discrimination. The district court in this matter listed three separate grounds for finding in favor of Point Frontier, any of which could be dispositive in this case. However, the first basis and the one that the district court found dispositive correctly was that Smith failed to exhaust her administrative remedies. And it's worth noting that if the court finds in Point Frontier's favor on this particular aspect of the case, further analysis is not necessary. We don't need to go into the summary judgment analysis because this is a jurisdictional issue. That if Ms. Smith failed to exhaust those administrative remedies, the district court never had jurisdiction to hear this claim. Now, as to this part, there's really not a lot of disagreement as to the law and as to the underlying facts of this, of the facts that are relevant to this analysis. The complaint speaks for itself, as does Ms. Smith's charge of discrimination. As the court pointed out earlier, the charge of discrimination never included any reference to the earlier 2012 charge. And it never included anything that would cause the EEOC to go back and investigate beyond the actual allegations of this claim. Well, counsel, it seems like Point Frontier's response to the 2014 EEOC charge, in particular the reference in that response to the 2012 charge, was a central feature of the appellant's argument in the brief and in the argument this morning. And the fact that the employer references the previous charge and indicates that it incurred thousands of dollars in legal fees, why wouldn't that put the agency on notice that maybe there is a retaliation issue involved here? But I believe what you have to do is you have to look at that response in its totality. If you read that response, the reasons for termination were consistent in the response, were consistent in the paperwork surrounding Ms. Smith's termination. I don't even understand why it's in there. It is, and you've got to contend with it. And it's not just a matter of reporting that Point Frontier defended the earlier charge. It seems to be complaining about having to do it. Thousands of dollars in legal fees to fight the appeal. Why doesn't that suggest some underlying resentment about having to deal with her previous charge and at least give the EEOC some basis for reasonable investigation of a retaliation claim? As to that point, I believe it may be an indication of annoyance with having to deal with another claim, but it wasn't submitted in the context of her termination. It was a timeline saying we've dealt with these before, and it may go to the credibility of that witness, but there was nothing in that statement that says this was a reason for termination. Now, it also would point the Court to – Wait a minute. Credibility of what witness? Of Ms. Smith's claim as the EEOC. No. I mean, this is a statement by the employer. Is there – there's no credibility issue relating to the statement, is there? As to the – what I meant by saying that or making that statement was if this is a repeat of Ms. Smith's making unfounded complaints, the EEOC may be able to consider that when it's determining whether there's credibility. Well, no, I understand there may be different ways of reading this, but isn't that the point, that there are different ways of reading this? And one way of reading it is to kind of raise a red flag with the EEOC that, hmm, they're mad at this person for bringing the previous complaint. Maybe that has something to do with why she was fired. And, Your Honor, I would actually point the Court to the Logsdon v. Turbines case, which was a Tenth Circuit case in the Federal Appendix. Unpublished. Unpublished, but persuasive authority. And in that case, this Court pointed out that the EEOC's anticipated scope of investigation is based on the EEOC claim, not what is put into the responding employer's position statement. In that case, there was a reference to a termination in the EEOC complaint, but it was just contained in the timeline. The respondent also referenced this plaintiff's termination, and the plaintiff then tried to bring a wrongful termination claim. But the Tenth Circuit in that case said this was not sufficient. There were not the allegations in that claim that would give rise to an exhaustion that showed that she exhausted her administrative memory. Are you taking a position based on Boston that nothing that the employer could say about the earlier EEOC claim could legally be sufficient to allow the EEOC, to reasonably direct the EEOC to that earlier claim? I think that Logsdon could be used in that direction, yes. In other words, Boston says that the answer to an EEOC claim does not assist the plaintiff at all in meeting their burden of bringing the same claim that you're now going to bring in district court. I believe that's correct. And did Boston, I haven't read Boston, but did it cite, even though it was no one jaded, did it cite other cases for that proposition that the employer's answer is irrelevant? I don't believe it cited other authority. I think it engaged our analysis. Are you taking a position? Are you asking us to decide that the employer's response is irrelevant? What if the employer here had said instead of, yeah, she sued us before and we incurred a lot of expenses, what if the employer had gone further and said, yeah, she sued us before, she's been in a pain in the neck, she's brought foolish claims before and we're fed up with her, and because of her persistent insistence on bringing foolish claims, we finally have found a reason to fire her. Would you say that that wouldn't have been enough to alert the EEOC to the earlier claim? And that's certainly an extreme hypothetical. Well, I know, but you're taking the position that there's just simply you're quoting Boston to us as taking the position that there is nothing the employer could say that would link a current EEOC complaint to a prior EEOC complaint. And then that may be a step too far. Okay, so you're not urging that as a matter of absolute law. You're simply saying that this reference was sufficiently ambiguous that it wasn't enough. So then we have to decide when is it enough ambiguity and when it isn't enough. I think that's correct. And in this case, when you look at what is actually in this EEOC charge, I think it's sufficient to say this is not enough. There's nothing that would have pointed, even if you were looking at this position statement, which I don't think is warranted in this case, but even if you were, based on that, that would not rope in all of this prior contact. I think the context of that statement is such that it's beyond the scope of what the EEOC would be expected to investigate. But even if that's, even if I'm wrong on that, even if this Court decides that there was an exhaustion of administrative remedies, we then go to the summary judgment. Well, one last thing on exhaustion. Sure. Do, should, do courts take into account, should courts take into account that the complainant, for the most part in these situations, are not represented by counsel? They're operating pro se, and they're not going to be able to dot all the I's, cross all the T's. Why shouldn't Ms. Smith be given some leeway in that regard in terms of the exhaustion issue? And I agree that this is not a formulaic requirement. And the courts have been clear on that, that this is a process usually completed by laypersons. And so, checking the right box as to the legal conclusion isn't necessarily required or isn't dispositive of a case. But it still must have the correct facts giving rise to that claim. And that's not present here. When you read this EEOC charge, it's very clear. Ms. Smith says, this began after a new shift leader, Raymond Heffner, was hired. She complained about Mr. Heffner and was fired less than a month later. It puts the dates of discrimination as between March 25, 2014 and April 21, 2014. All of the facts in this EEOC charge deal with an entirely separate set of people, set of circumstances, set of occurrences than would have occurred with this 2012 claim. And part of the purpose of these charges of discrimination is to put the employer on notice of the charges against it. Here, the employer is not on any notice that Ms. Smith is claiming this 2012 EEOC claim had any bearing on her termination. And one of the keys. Is she charged with any notice of the fact that there was a 2012 claim, given that it's their agency? I've not seen anything that puts them on constructive notice of prior filings. Not only that, but I take it that Mr. Heffner clearly was not involved in the 2012 incidents. And is there any evidence that Mr. Oliver was involved in the 2012 incidents? Mr. Heffner certainly was not. He didn't even come on board until 2014? Correct. How about Mr. Oliver? Mr. Oliver was around during that time period. So was there any allegation at all that he knew or should have known or institutionally was charged with knowledge of that earlier event? I can tell you he had actual knowledge of that prior event. He was around and involved when the 2012 charge was made. Was that statement contained in the 2014 EEOC charge that Mr. Oliver had been around in the earlier event? Certainly not in this paperwork. I don't know as far as a further investigation, because I don't think this 2012 EEOC charge was ever really explored, other than the one statement in the position paper, the position statement. But time is getting short. I want to touch on a couple of those summary judgment issues as well. So the district court also found that even if there were jurisdiction in this case, there are two separate grounds for summary judgment. The first is the lack of a causal connection. And that means there has to have been some evidence linking the protected activity, which, if there was jurisdiction, would have been that 2012 EEOC charge with her termination. And plaintiff must be able to show that. It's usually done through temporal proximity, as the appellant argued. But that temporal proximity is limited under this circuit's case law. Ninety days is beyond the scope of what can establish temporal proximity. There's no inference of a proximity beyond even including 90 days. And both the U.S. Supreme Court and Clark County School Board case, which was cited in the briefing, found that it's the filing of the claim that sets that clock to running. It's not the completion of the investigation process. In another unpublished opinion, this- Why wouldn't the starting of that 90-day process be after the appeal right was exhausted, was terminated by time? Not exhausted, but barred by time. I don't want to make- Are you asking why that 90 days doesn't start running at the end of the investigation? No, not at the end of the investigation, but at the end of the time to bring a civil action on basis of the first EEOC claim. Wouldn't it be reasonable to say, Employer, you were holding back on really firing me until I had finished- I had lost my opportunity to appeal the first time. If you had fired me while I still had an ability to bring a separate claim, I would have brought that. The timing is explained perfectly almost within two weeks after I lost the appeal right in the first claim that you then fired me. I believe the U.S. Supreme Court addressed that in that Clark County case, where it said it is the protected activity, not the completion of the investigation. It's the activity in filing the charge that is what the court should base its analysis on, not the- there's no activity in the running out of statute of limitations. So, truthfully, I think the temporal proximity argument is an easy one to address because there is a direct case law point. You have to look at the other factors that might be able to establish a causal connection. For example, there's the position paper statement, and that's the only other evidence that was introduced. And based solely on that one statement, could a jury find that that was the reason for termination? The district court found that it was not, and I think that's correct. That is too small of an evidentiary basis and too attenuated one. It's distant. It's not in the context for termination. It's just a reference in a timeline that this has happened before, and I don't think that meets the prima facie burden of a causal connection. And then the last reason, and I know I'm out of time here, but it's the issue of pretext. And understanding the timelines, the one point I want to make on that is the issue is not really what actually happened, whether Mr. Heffner told Ms. Smith what- to work upstairs, to work downstairs. What is important is what was in front of Mr. Oliver when he made the decision to terminate. What were the uncontested facts there and there that Mr. Heffner told him of this conversation, whether it happened or not? He investigated it by talking to Ms. Smith's co-worker to her other server. He looked at the printed schedule, which indicated she was supposed to be working elsewhere. Then at the end of the day, he spoke with Ms. Smith and made that decision. Thank you, counsel. Thank you. Well, he went over, so Mr. Phelan, if you want 30 seconds, you got it. All right. Thank you. Thanks to both of you for your arguments. The case will be submitted. Counsel are excused. This Court will stand in recess until 9 o'clock tomorrow morning.